UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHN DOES 1–50,<br><br>          Defendants. | No. 2:18-cv-1399<br><br>COMPLAINT |

## I.     INTRODUCTION

1.     Amazon.com, Inc. ("Amazon") is one of the most highly regarded and trusted brands in the world—built through years of dedication to its customers.  Millions of consumers around the world shop on the Amazon.com website for hundreds of millions of items.  Amazon Web Services ("AWS") provides a cloud computing service to individuals, companies, and governments offering computing power, database storage, content delivery, and various other functions.  Amazon is fully committed to protecting its customers, marketplace, and services from cybercriminals who seek to take advantage of Amazon's brand for illegal purposes.

2.     John Does 1-50 ("Defendants") are harming Amazon's customers and damaging Amazon's brand through a sophisticated and widespread "malvertising" campaign.  Malvertising describes malicious advertisements used by organized crime (and others) to harm consumers and the entire online advertising industry.  It potentially threatens consumers

COMPLAINT (2:18-cv-1399) - 1
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

through a range of harmful actions, including disrupted user experiences, sophisticated malware attacks, and denial of service issues. It threatens the advertising publishers because users associate the malvertisements with legitimate publishers, and oftentimes hold them responsible. Malvertising also directly damages brands, like Amazon, that malvertisers unlawfully use in an effort to deceive consumers into participating in the fraud.

3. Defendants created the malvertising scheme described here in an effort to obtain the personal information of consumers and to generate fraudulent advertising revenue when consumers unwittingly click on fraudulent ads. Defendants' malvertising scheme hijacks legitimate online advertising processes by injecting malicious code into advertisements that render (display) on popular websites. Defendants' scheme then forcibly redirects a user from the desired page to a website controlled by Defendants replete with Amazon's trademarks and other indications of Amazon's brand. The web page is designed to deceive users into believing Defendants' website is affiliated with Amazon—all of which entices users to click on Defendants' websites, participate in purported surveys and other offerings, and provide their personal information. Defendants have further taken steps to intentionally obfuscate their identities by creating a sophisticated web of sites to commit this fraud.

4. Defendants' scheme, along with others like it, are a scourge on the internet. Amazon operates its own advertising service, and it exercises great care to deliver safe, malware free ads. Yet, Defendants' scheme—which did not use and is not associated with Amazon's advertising service—deceives consumers by using Amazon's trademarks and reputation to legitimize their activities. This naturally harms not only the consumers, but also customer's trust in Amazon. Amazon brings this suit to stop Defendants' scheme and hold them accountable for their actions.

COMPLAINT (2:18-cv-1399) - 2
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## II. PARTIES

5. Amazon is a Delaware corporation with its principal place of business in Seattle, Washington. Through its subsidiaries, Amazon owns and operates the Amazon.com website, equivalent international websites and AWS.

6. The true identities of Defendants are not presently known to Amazon. On information and belief, Defendants are individuals and entities working in active concert to knowingly and willfully run the malvertising scheme alleged in this Complaint, including by using Amazon's trademarks and brand to deceive victims.

## III. JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over Amazon's claims for trademark infringement (15 U.S.C. § 1114), violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and trademark dilution (15 U.S.C. § 1125(c)) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

8. The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to this District, and Amazon's claims arise from those activities. On information and belief, Defendants' malvertising scheme specifically targets users in this District and Defendants' websites actively solicit interaction from users in this District by deceiving them into participating in online surveys and providing personal information.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

10. Pursuant to Local Civil Rule 3(d), intra-district assignment to the Seattle Division is proper because the claims arose in this Division where (a) Amazon resides, (b) the injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

COMPLAINT (2:18-cv-1399) - 3
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## IV. FACTS

### A. Amazon Protects Its Customers

11. Amazon is one of the most trusted consumer brands in the world. Over decades, Amazon has created a highly-regarded and trusted brand that is inextricably linked with online sales and services. Millions of consumers use Amazon.com to purchase a wide range of products, and individuals, businesses and governments rely on AWS for cloud computing.

12. Amazon devotes significant resources to protecting its customers from criminals who attempt to victimize users by deceiving them into believing they are affiliated with Amazon.

13. Amazon's products and services are readily identifiable to consumers around the world because of the company's substantial and years-long investment of time, money, and other resources in Amazon's brand, including exclusive ownership of numerous federally-registered and registration-pending trademarks. This intellectual property is a core component of Amazon's brand. Relevant to this case, these trademarks and service marks include the following marks (collectively "Amazon Trademarks"):

| **Mark** | **Registration No. (International Classes)** |
|---|---|
| AMAZON | 2,738,837 (Int. Cl. 38) <br><br> 2,832,943 (Int. Cl. 35) <br><br> 4,907,371 (Int. Cls.:35, 41 and 42) |
| AMAZON.COM | 2,167,345 (Int. Cl. 35) <br><br> 2,559,936 (Int. Cl. 35, 36, 42) <br><br> 2,633,281 (Int. Cl. 38) <br><br> 2,837,138 (Int. Cl. 35) |

COMPLAINT (2:18-cv-1399) - 4
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

| | |
|---|---|
| amazon | 5,508,999 (Int. Cl. 35) |
| a | 3,904,646 (Int. Cl. 35) |

14. The Amazon Trademarks have been used exclusively and continuously by Amazon, and have never been abandoned. The above U.S. registrations for the Amazon Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Amazon Trademarks constitute prima facie evidence of their validity and of Amazon's exclusive right to use the Amazon Trademarks pursuant to 15 U.S.C. § 1057(b).

15. The Amazon Trademarks are distinctive when used with the products and services sold by Amazon, signifying to the purchaser that the products and services come from Amazon and meet Amazon's numerous quality standards. The Amazon Trademarks have achieved tremendous trust and recognition, which has only added to the marks' inherent distinctiveness.

**B.    Online Advertising**

16. As every internet user is aware, online advertising is a prominent feature of the internet. Banner advertisements marketing products and services are on nearly every commercial website. These advertisements have become part of the user experience, and often comprise a significant portion of a webpage's content.

17. Online advertising, and the revenue it generates, fuels many of the most popular online offerings, including social networking sites and media outlets. Companies are able to offer users "free" content because of the willingness of advertisers to purchase space on webpages. Users are willing to accept the advertisements because they receive "free" content

COMPLAINT (2:18-cv-1399) - 5
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

and relevant information about products and services they want to purchase.

18. Online advertising is particularly effective because of its ability to deliver relevant ads aligned with users' interests. At scale, companies can target their advertisements at particular websites, and even specific users of that site. Advertisements can target specific geographic regions, device settings, and browsing history.

19. At its most basic, online advertising involves two different parties, a publisher who displays the ad to a user and the advertiser who places the ad with the publisher. In this model, the publisher directly interacts with the advertiser to place the advertising content on the publisher's website.

20. Over time, however, online advertising has become an increasingly complex process that can involve myriad parties. Most websites now look to ad networks to place advertisements on their website and the advertisements are not controlled by the website the user visited, but by the ad network.

21. When a user visits a website, the publisher's website instructs the user's browser to contact the ad network. The ad network then looks for information it has stored on the browser, including information it has collected through the use of "cookies."[1] Based on this information, the ad network determines what advertisement should be served to the user. Generally speaking, the ad networks instruct the user's browser to a content delivery network from which the advertisement is delivered.

22. Often, there is not just one ad network involved. For example, ad exchanges (such as AppNexus and OpenX) allow multiple parties to bid in real time to display a specific ad to a user. The purpose of this system is to allow advertisers to serve users more targeted and relevant ads. When a user's browser contacts the ad exchange and provides the user's unique identifiers, the ad exchange will combine this information with the publisher's requirements.

---

[1] At a high level, "cookies" are tools associated with websites that work in the background with a user's browser to save information about the user's device and browsing history.

COMPLAINT (2:18-cv-1399) - 6
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Advertisers will then bid against one another in real time to place the particular ad. Further, there can be multiple ad exchanges working at the same time. Demand-side platforms work on behalf of advertisers to monitor multiple ad exchanges. Typically, the highest bidder wins and its ad will be sent to the publisher for display to the user.

23. The ad the user sees, therefore, could pass through any number of parties before being sent to the user's browser. All of this takes place in real time, often in less than one second, every time a user visits a web page.

**C. The Malvertising Threat**

24. Malvertisers exploit the complexity in the modern advertising process. The multiple parties and layers in the advertising process allow malvertisers to obscure their intentions and identities, while leveraging the same tools as genuine advertisers in order to target victims. Malvertisers have a multitude of goals, including (but not limited to) diverting traffic to other websites for purposes of monetizing traffic, harvesting users' personal information, and delivering dangerous ransomware.

25. To malvertisers, advertisements are a content delivery opportunity. Without a user taking any action, malvertisers can force a user's computer to take a desired action (such as redirecting to a different website). Malvertisers accomplish this by hiding malicious code within the advertisements, essentially hijacking the online advertising process.

26. Legitimate publishers, ad networks, and ad exchanges spend considerable resources trying to the combat malvertising, including by reviewing advertisements for the malicious code. Legitimate advertisers have even formed industry-wide groups to tackle the problem, but some malvertising schemes still go undetected and/or unaddressed.

27. Malvertising harms the entire online advertising industry. Each of the legitimate stakeholders has a role to play in protecting consumers from the harms caused by malvertising.

COMPLAINT (2:18-cv-1399) - 7
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

### D.  Defendants' Unlawful Malvertising Scheme to Deceive Consumers

28. Defendants are engaged in a widespread and systematic malvertising campaign that uses the Amazon Trademarks and other representations of Amazon's brand to deceive Defendants' intended victims.

29. On information and belief, Defendants place malicious JavaScript code into non-Amazon banner advertisements. This malicious code is designed to take advantage of vulnerabilities in a user's browser. Defendants use legitimate ad exchanges and ad networks to inject these banner advertisements onto legitimate websites.

30. On information and belief, Defendants take deliberate steps to design their banner advertisements to avoid detection by the ad exchanges, ad networks, publishers and users. Defendants do this to hide their identity, disguise their advertisements' malicious purpose, and to deceive unsuspecting victims.

31. When Defendants' banner advertisement loads in a user's browser, it redirects the user through at least one of two domains that Defendants use to redirect traffic to a malicious landing page. A user would not ordinarily see either of these two domains because the browser would not render the websites; they are simply a means of directing traffic and further obfuscating Defendants' identity.

32. One of the domains Defendants use to redirect traffic is the domain looksafebro.com, and specifically the subdomain us.looksafebro.com. The domain (looksafebro.com) was registered on February 15, 2018 using the registrar NameCheap, Inc. The registrant of the domain paid for an anonymizing service to hide their identity from public disclosure. The domain looksafebro.com is being hosted through Cloudflare, Inc. The subdomain us.looksafebro.com is being hosted through OpenDNS, which is owned by Cisco Systems, Inc.

33. A second domain Defendants use to redirect traffic is unberllerclick.com, and specifically the subdomain mob.unberllerclick.com. The domain (unberllerclick.com) was

COMPLAINT (2:18-cv-1399) - 8
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  registered on March 18, 2018 using the registrar Public Domain Registry, which is part of
2  P.D.R. Solutions (U.S.), LLC.  As with the other domain, the registrant of the domain paid for
3  an anonymizing service to hide their identity from public disclosure.  The domain
4  unberllerclick.com is being hosted through Cloudflare, Inc.  The subdomain
5  mob.unberllerclick.com is being hosted through OpenDNS, which is owned by Cisco Systems,
6  Inc.

   34.  When Defendants redirect a user through either us.looksafebro.com or
mob.unberllerclick.com, the user is sent to a landing page that, on information and belief, is
meant to deceive users into believing that it is affiliated with Amazon.  Among other things,
this landing page causes a deceiving pop-up to appear on the user's screen.  A screenshot of a
version of this pop-up is below:



The routing through us.looksafebro.com or mob.unberllerclick.com happens so quickly that this
pop-up appears as if it comes from the original website on which Defendants' malicious banner
ad was published (i.e., the genuine website a user intended to visit).  On information and belief,
Defendants intentionally designed this pop-up to deceive users into believing that it originates
with or is affiliated with Amazon.

COMPLAINT (2:18-cv-1399) - 9
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

35. In addition to rendering the pop-up above, the landing page itself uses the Amazon Trademarks and other indications of Amazon's brand. On information and belief, Defendants intentionally designed this landing page to deceive users into believing that it originates with or is affiliated with Amazon. A screenshot of the landing page is below:

[Screenshot of fake Amazon landing page showing "You Are Lucky Winner Today!" header, amazon logo, "Amazon.com Membership Rewards" banner, congratulations message stating "Congratulations Amazon.com User, you have won a gift!", text explaining that every Wednesday/Saturday 50 lucky Amazon.com users are selected randomly to receive a gift, offering choice of $1000 Amazon Gift Card, Apple iPhone X 256G, or Samsung Galaxy S8, Question 1 of 3: "Who founded Amazon?" with three answer buttons (Bill Gates, Mark Zuckerberg, Jeff Bezos), and a Customer reviews section with fake reviews from Ralph P., Xaymara melendez, Jamie Robertson, Julia Meyer, Thomas Schulz, Rolf Schneider, Lexi Benz, and Barbara Meier]

COMPLAINT (2:18-cv-1399) - 10
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

36. Defendants render the landing page on a rotating set of domains and subdomains using the generic top level domain ".top." For example, one of Defendants' landing pages used the domain us.decentralized562ea.top. Another domain used was us.visualizes338xi.top.

37. Defendants register hundreds (if not more) ".top" domains per month for use in their malvertising operation. On information and belief, Defendants use rotating ".top" domains as a further means of evading detection methods and systems used by brands, ad networks, ad exchanges and publishers to shut down malvertising operations like Defendants' scheme. On information and belief, Defendants can easily redirect users to the active ".top" domain when prior domains are taken down by legitimate service providers.

38. Defendants register the .top domains used in their malvertising scheme through Public Domain Registry, which is part of P.D.R. Solutions (U.S.), LLC. Defendants provide the registrant's name as James Carter and use the email address carter@gmail.com to register the domains. On information and belief, the name James Carter is a pseudonym Defendants use to hide their true identity. Defendants also provide fake addresses and phone numbers.

39. If a user chooses to participate in Defendants' survey contained on the landing page shown above, the user will be directed through a series of pages contained on the ".top" domain. After a user completes the short survey, they exit the landing page through track.googlaappla.com. As with us.looksafebro.com and mob.unberllerclick.com, this website merely redirects the user and occurs in a manner in which an ordinary user would not know they are being directed through this domain. The domain googlaappla.com was registered on October 29, 2017 using the registrar NameCheap, Inc. The registrant of the domain paid for an anonymizing service to hide their identity from public disclosure. The domain is being hosted by Cloudflare, Inc.

40. After being redirected through track.googlaappla.com, the user is directed to websites offering various purported offers and opportunities for (among other things) taking additional surveys. The sites Defendants direct users to include retailproductzone.com,

COMPLAINT (2:18-cv-1399) - 11
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax


amarktflow.com and usarewardspot.com.  On information and belief, these websites are controlled by a company called Fluent, Inc., along with its subsidiaries and affiliates.  These websites also use the Amazon Trademarks in order to deceive users into believing their websites are affiliated with Amazon.  For example, a screenshot of the homepage for usarewardspot.com is below:



41. On information and belief, Defendants malvertising scheme is designed to generate revenue by redirecting users—without the users' authorization or knowledge—to Defendants' domains and the domains controlled by Fluent, Inc.  From there, Defendants can monetize this hijacked internet traffic and clicks in a variety of ways.  Defendants' conduct is harmful to consumers because, on information and belief, it misappropriates their internet traffic and, in some cases, their personal information.  Defendants' conduct is further harmful to Amazon's brand because it causes consumers to believe that Defendants' unwanted redirects and websites are affiliated with Amazon.

COMPLAINT (2:18-cv-1399) - 12
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Trademark Infringement (15 U.S.C. § 1114)

42. Amazon incorporates by reference the factual allegations contained in Section I–IV as though set forth herein.

43. Defendants' activities infringe the Amazon Trademarks.

44. Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

45. Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Amazon.

46. Defendants' pop-ups and websites use the Amazon Trademarks in commerce in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, or authenticity of Defendants' websites.

47. Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that Defendants' websites originate with or are authorized by Amazon, thereby harming Amazon and the public.

48. At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, their authority to use the Amazon Trademarks and the confusion that the use of those trademarks would have on consumers as to the source, sponsorship, affiliation or approval by Amazon of Defendants' websites.

49. Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

50. As a result of Defendants' wrongful conduct, Amazon is entitled to recover its

COMPLAINT (2:18-cv-1399) - 13
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b). The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants. Alternatively, Amazon is entitled to statutory damages under 15 U.S.C. § 1117(c).

51. Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below. Amazon has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Amazon Trademarks are unique and valuable property; (b) Defendants' infringement constitutes harm to Amazon's reputation and goodwill such that Amazon could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing websites; and (d) Defendants' wrongful conduct, and the resulting harm to Amazon, is continuing.

## SECOND CAUSE OF ACTION

**False Designation of Origin and False Advertising (15 U.S.C. § 1125(a))**

52. Amazon incorporates by reference the factual allegations contained in Section I–IV as though set forth herein.

53. Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

54. Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, end users, and the public to signify, products and services from Amazon.

55. Amazon has also designed distinctive and aesthetically pleasing displays, logos, icons, and graphic images (collectively, "Amazon designs") for its websites.

56. Defendants' wrongful conduct includes the use of the Amazon Trademarks, Amazon's name, and/or imitation designs (specifically displays, logos, icons, and/or graphic

COMPLAINT (2:18-cv-1399) - 14
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

designs virtually indistinguishable from the Amazon designs) in connection with Defendants' commercial advertising or promotion.

57. Defendants have used, and continue to use, the Amazon Trademarks, Amazon's name, and/or imitation designs to deceive customers. On information and belief, Defendants' wrongful conduct misleads and confuses their users and the public as to the origin and authenticity of the goods and services advertised, marketed, offered or distributed in connection with Amazon's trademarks, name, and imitation visual designs, and wrongfully trades upon Amazon's goodwill and business reputation. Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false advertising, all in violation of 15 U.S.C. § 1125(a).

58. Defendants' acts constitute willful false statements in connection with goods and/or services distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

59. Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

60. Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below. Defendants' acts have caused irreparable injury to Amazon. The injury to Amazon is and continues to be ongoing and irreparable. An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

61. As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b). The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.

COMPLAINT (2:18-cv-1399) - 15
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

### THIRD CAUSE OF ACTION

### Trademark Dilution (15 U.S.C. § 1125(c))

62. Amazon incorporates by reference the factual allegations contained in Section I–IV as though set forth herein.

63. Amazon has exclusively and continuously promoted and used the Amazon Trademarks. As one of the world's most well-known technology companies, the Amazon Trademarks have become famous, distinctive and well-known symbols of Amazon—well before any of the Defendants began using the Amazon Trademarks in association with their goods or services unaffiliated with Amazon through the Defendants' illegal use and infringement of the Amazon Trademarks.

64. The actions of the Defendants including, but not limited to, their unauthorized use of the Amazon Trademarks in commerce to deceive users into believing Defendants' websites are affiliated with Amazon are likely to cause dilution of the Amazon Trademarks by blurring and tarnishment in violation of 15 U.S.C. §1125(c).

65. As a result of Defendants' willful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a).

66. Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below. Defendants' acts have caused irreparable injury to Amazon. The injury to Amazon is and continues to be ongoing and irreparable. An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

### VI.   PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully prays for the following relief:

A. That the Court enter judgment in Amazon's favor on all claims;

B. That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, employees, successors and assigns, and all others in active concert or

COMPLAINT (2:18-cv-1399) - 16
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

participation with them, from:

    (i)    Using the Amazon Trademarks in connection with any offer, survey, pop-up or other website;

    (ii)    Using any other indication of Amazon's brand in connection with any offer, survey, pop-up or other website;

    (iii)    Making any statement of an affiliation or connection to Amazon in connection with any offer, survey, pop-up or other website; or

    (iv)    assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iii) above;

C.    That the Court enter an order requiring Defendants to provide Amazon a full and complete accounting of all gross and net amounts earned in connection with the malvertising scheme alleged in this Complaint;

D.    That Defendants' profits from the unlawful malvertising scheme alleged in this Complaint be disgorged pursuant to 15 U.S.C. § 1117(a);

E.    That Defendants be required to pay all general, special, actual, and statutory damages which Amazon has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117(a)–(b), or otherwise allowed by law;

F.    That Defendants be required to pay the costs of this action and Amazon's reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117 or otherwise by law; and

G.    That the Court grant Amazon such other, further, and additional relief as the Court deems just and equitable.

COMPLAINT (2:18-cv-1399) - 17
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1 | DATED this 21st day of September, 2018.

DAVIS WRIGHT TREMAINE LLP

By *s/ Bonnie E. MacNaughton*
Bonnie E. MacNaughton, WSBA #36110

*s/ James H. Wendell*
James H. Wendell, WSBA #46489
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Phone:  (206) 622-3150
Fax: (206) 757-7700
Email:    bonniemacnaughton@dwt.com
              jamiewendell@dwt.com

*Attorneys for Plaintiff Amazon.com, Inc.*

COMPLAINT (2:18-cv-1399) - 18
4846-2421-7453v.5 0051461-002010

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax