1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13
14
15
16

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> HUANG TENGWEI, an individual; XIE WEIYONG, an individual; and ADSWING TECHNOLOGY, CO., LTD., a Hong Kong company, <br><br> Defendants. | No. C18-1399RSM <br><br> ORDER GRANTING IN PART PLAINTIFF AMAZON'S MOTION FOR DEFAULT JUDGMENT |

17
18

## I.    INTRODUCTION

19
20
21
22
23
24
25
26
27

This matter comes before the Court on Plaintiff Amazon.com, Inc. ("Amazon")'s Motion for Default Judgment against Defendants Huang Tengwei, Xie Weiyong, and Adswing Technology Co., Ltd. (collectively, "Defendants").  Dkt. #27.  On June 5, 2019, the Court granted Amazon's Motion for Default against Defendants.  Dkt. #23.  Amazon now requests $4 million in statutory damages against Defendants jointly and severally and a permanent injunction prohibiting Defendants from engaging in future trademark infringement.  Having

ORDER GRANTING IN PART AMAZON'S MOTION FOR DEFAULT JUDGMENT - 1

reviewed Amazon's Motion, the supporting documents, and the remainder of the record, the Court finds good cause to grant the requested relief in part.

## II.   BACKGROUND

The Court accepts the following well-pleaded allegations of Amazon's Amended Complaint as established fact.  *See LHF Prods., Inc. v. Holmes*, 2018 WL 3742189, at *2 (W.D. Wash. Aug. 7, 2018) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).

Millions of consumers around the world shop on Amazon.com for hundreds of millions of items.  Amazon is one of the most recognized brands in the world.

"Malvertising" describes malicious advertisements that harm consumers and damage the entire online advertising industry. Malvertising threatens consumers through a range of harmful actions, including disrupted user experiences and malware attacks. It threatens the advertising publishers because users associate the malvertisements with them. It also directly damages brands, like Amazon, that malvertisers unlawfully use in an effort to deceive consumers.

From their office in China, Defendants Huang Tengwei ("Huang") and Xie Weiyong ("Xie") operated a sophisticated and widespread "malvertising" campaign that harmed Amazon's customers and damaged Amazon's brand. Huang and Xie operate under a multitude of company names (some real, some fictitious), including for example, AdsBays, Tap My Traffic, Adbooming, and Adscompanion.

Defendants Huang and Xie hijacked the legitimate online advertising process by injecting malicious code into advertisements published on popular websites. Defendants' malvertisements forcibly redirected victims from their desired websites to a website controlled

ORDER GRANTING IN PART AMAZON'S MOTION FOR DEFAULT JUDGMENT - 2

by Defendants replete with Amazon's trademarks and other indications of Amazon's brand. Defendants intentionally designed this website to deceive victims into believing it was affiliated with Amazon to entice victims to click through. Defendants then sold the generated traffic to online marketing companies.

Amazon operates its own advertising service. The abuse of Amazon's brand was central to Defendants' malvertising scheme, and Defendants' actions directly harmed consumers. Amazon's products and services are readily identifiable to consumers around the world because of the company's substantial investment of time, money, and other resources in Amazon's brand, including exclusive ownership of numerous federally registered and registration-pending trademarks including the following marks at issue in this case: AMAZON, AMAZON.COM, the Amazon logo, and the abbreviated "a" Amazon logo as pictured in the Amended Complaint. *See* Dkt. #11 at 5–6.

Defendant Huang Tengwei and Defendant Xie Weiyong are individuals who likely reside in China. Dkt. #29 ("Williams Decl."), ¶ 4. Defendant Adswing Technology Co., Ltd. ("Adswing") is a company registered in Hong Kong, China, and owned by Xie. *Id.*

As stated above, Amazon alleges that Defendants engaged in an online advertising scheme that deceived online consumers using Amazon's name and marks. *See* Dkt. #27 at 5–7 (citing Amended Complaint). Further evidence to support these allegations come in the form of a declaration from an Amazon employee, Jason A. Roe, who states that he has reviewed "numerous" complaints Amazon has received about this malvertizing scheme. Dkt. #30 at ¶ 3. These complaints are not attached as exhibits. Mr. Roe references and quotes from eight customer complaints. *Id.* at ¶ 4 – 11.

ORDER GRANTING IN PART AMAZON'S MOTION FOR DEFAULT JUDGMENT - 3

Amazon also includes a declaration of a strategic brand analyst and investigator named Nate Hall who details how the malvertizing scheme worked on a technical level.  Dkt. #31. Through the use of Amazon's name and marks, Defendants directed duped online users to a New York-based marketing company called Fluent, Inc. that purchased this traffic.  *Id.* at ¶ 11. Mr. Hall states that "[b]ased upon my review of records provided by Fluent and my investigation, Defendants referred over 800,000 unique victims to Fluent through Defendants' AdsBays account alone" and that "[b]ased on my experience as an investigator, the number of victims who received Defendants' malvertisements… is far greater than 800,000 because not every victim who viewed Defendants' Landing Page completed the survey." *Id*. at 14–15.

The Court previously granted leave under Federal Rule of Civil Procedure 4(f)(3) and (h)(2) to serve Defendants by registered electronic mail to the following email addresses used by Defendants:

- 1165592@qq.com
- 263947523@qq.com
- 372318566@qq.com
- lily@adbays.com

## III.    ANALYSIS

### A.  Legal Standard and Jurisdiction

The Court has the authority to enter a default judgment based on the clerk's entry of default and pursuant to Federal Rule of Civil Procedure 55 and Local Civil Rule 55.

The Court has subject matter jurisdiction over Amazon's claims under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). The Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with

Washington and Amazon's claims arise from those contacts. Specifically, Defendants purposefully directed their malvertisements towards Washington, and but for Defendants' malvertisements, Amazon would not have been injured. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

To determine a plaintiff's entitlement to default judgment, the Court considers the seven factors set forth in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986): "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." 782 F.2d at 1471-72.

**B.   Liability**

As an initial matter, the Court finds that the Defendants' liability has been established in this case.  To establish trademark infringement, a claimant must show: (1) it has a protected ownership interest in the mark; and (2) the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006); 15 U.S.C. § 1114(1).

Amazon's uncontested proof of registration of the four trademarks that Defendants used in their malvertising scheme ("Amazon Trademarks") establishes Amazon's protected ownership interest in those marks. *See* Am. Compl. ¶¶ 16, 31; Wendell Decl., Exs. A-D; *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) ("Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the

ORDER GRANTING IN PART AMAZON'S MOTION FOR DEFAULT JUDGMENT - 5

registration. When proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met." (internal citation omitted)).

Defendants' uncontested use of the Amazon Trademarks confused victims as to the origin of Defendants' website. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076-78 (9th Cir. 2006). The Amazon Trademarks are strong and have achieved trust and recognition among the general public. *See* Am. Compl. ¶¶ 14-18. Defendants intentionally used exact copies of the Amazon Trademarks in their malvertisements to deceive consumers. *See id.* at ¶¶ 40, 42. Defendants specifically targeted Amazon customers, *id.* at ¶¶ 33, 40, and deliberately designed their malvertisements to impersonate Amazon. *See id.* at ¶¶ 34, 40, 42. In doing so, Defendants successfully enticed over 800,000 victims to at least click through to Defendants' website. *See id.* at ¶¶ 59-60. Amazon has also shown at least some actual confusion. *See, e.g.,* Roe Decl. at ¶¶4-6. Accordingly, Amazon has demonstrated that Defendants infringed the Amazon Trademarks.

## C. Eitel Factors

### 1. Prejudice to the Plaintiff

Amazon argues this factor weighs in their favor because "[a]bsent a default judgment, Amazon has no legal remedy for Defendants' harm, and no way to prevent Defendants from causing further damage to Amazon and its customers. Dkt. #27 at 15 (citing *POW Nev., LLC v. Connery*, 2018 WL 3956129, *2 (W.D. Wash. Aug. 17, 2018)). Given Defendants' lack of participation in this litigation, the Court agrees.

### 2. Merits of Substantive Claim

As explained above, the Court finds that Amazon has established Defendants' liability. The only remaining issue is the proper amount of damages.

ORDER GRANTING IN PART AMAZON'S MOTION FOR DEFAULT JUDGMENT - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### 3.   Sufficiency of the Complaint

As explained above, Amazon has established Defendants' liability.   The Amended Complaint sets forth sufficient specific facts that establish a prima facie case of trademark infringement under 15 U.S.C. § 1114.

### 4.   Sum of Money at Stake

Amazon argues that the sum of money Amazon seeks in damages is reasonable in light of Defendant's "flagrant exploitation of victims' trust in Amazon."  Dkt. #27 at 15.  Although the seriousness of Defendant's conduct is considered by this Court, other factors are also considered in determining whether the sum of money requested is reasonable.   In cases of willful infringement, courts consider the need: (1) to compensate the plaintiff for the damage the defendant's actions caused; (2) to deter defendants from violating the trademarks; and (3) to punish defendants for willfully violating the trademarks.  *See Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007).

The Lanham Act authorizes statutory damages of up to $2 million per mark for willful trademark infringement.  *See* 15 U.S.C. § 1117(c).  Amazon argues that "given the facts and circumstances in this case, an award of fifty percent of the available statutory damages is reasonable based on the seriousness of Defendants' unlawful conduct and necessary in order to deter continuing abuse of Amazon's brand."   Dkt. #27 at 18.   Amazon contends that Defendants willfully used four counterfeit Amazon trademarks.  *Id*.

"Statutory damages further 'compensatory and punitive purposes,' and help 'sanction and vindicate the statutory policy of discouraging infringement.'" *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009).  A court has wide discretion to determine the amount of statutory damages between the statutory maxima and minima. *Harris v. Emus*

*Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).  In calculating statutory damage, some courts have looked to estimates of actual damages.  *See Sara Lee Corp. v. Bags of New York*, Inc., 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999).  Here, Amazon gives no estimates of actual damages to itself nor how much defendant profited from his actions.  Amazon argues that 800,000 or more "victims" saw these ads but fails to connect this number to actual damages suffered by Amazon. The evidence of customers actually being confused is fairly limited—a handful of anecdotes in an employee declaration.  Instead, to support its multi-million dollar request, Amazon cites to several other default judgment orders where millions were awarded. *See* Dkt. #27 at 16.

Considering all of the above, the Court agrees that an award of fifty percent of the available statutory damages is reasonable based on the seriousness of Defendants' unlawful conduct.  The number of potential Amazon customers affected alone is sufficient to warrant such an award, and the Court is cognizant of the difficulty in demonstrating actual damages. However, the Court finds that, under the circumstances of this case, multiplying this $1 million by four for the four marks at issue results in an unreasonably punitive award untethered to evidence of actual damages.  Amazon was damaged by the use of its brand.  At least some customers were misled into believing that the malvertising campaign was directed by Amazon. This happened with the use of the mark "AMAZON" and the Amazon logo.  Subsequent additional references to "AMAZON.COM" and the "a" logo were essentially superfluous and did not significantly increase Amazon's actual damages, customer confusion, or the seriousness of Defendant's conduct.  Amazon has failed to convince the Court to the contrary. Accordingly, the Court concludes that an appropriate award is as follows: $1 million for

AMAZON, $1 million for the Amazon logo, and a nominal award of $1,000 each for "AMAZON.COM" and "a" logo marks, for a total award of $2,002,000.

### 5. Possibility of a Dispute Concerning Material Facts

The Court finds that, based on the record above, there is a low possibility of a dispute concerning material facts. The Court's only concern is with the limited evidence linking the obviously illegal malvertising scheme above to the Defendants Huang Tengwei, Xie Weiyong, and Adswing Technology Co., Ltd. Amazon does not discuss evidence of this link, other than to cite to a declaration of an investigator in China and a strategic brand analyst who determined that Huang Tengwei, Xie Weiyong, and Adswing Technology Co., Ltd. "own, operate, and financially benefit from the schemes." Dkt. #31 at 2.

### 6. Whether the Default was due to Excusable Neglect

The Court is satisfied that Defendants were served as best as possible with notice of this case. There is no evidence of excusable neglect to balance against the other factors in favor of default judgment.

### 7. Strong Policy Favoring Decisions on the Merits

The Court agrees with Amazon that where, as here, Defendants' failure to appear makes a decision on the merits "impractical, if not impossible," any preference for deciding cases on the merits "does not preclude a court from granting default judgment." Dkt. #27 (quoting *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### D. Injunctive Relief

In addition to statutory damages, Amazon seeks to permanently enjoin Defendants from further infringing the Amazon Trademarks. The Lanham Act authorizes courts to grant injunctive relief "to prevent the violation of any right of the registrant of a mark." 15 U.S.C. §

1116(a). "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

It is clear from the record that Defendants knew that what they were doing was illegal. This is not a case where clarity from the Court could help Defendants avoid further violations. The Court is not inclined to simply order Defendants to stop obviously breaking the law. If Defendants are caught conducting the same malvertising campaign again, the requested injunction would offer Amazon no further protection than monetary damages. Accordingly, this relief will be denied.

## IV.   CONCLUSION

The Court, having reviewed the relevant briefing and the remainder of the record, finds adequate bases for default judgment. Accordingly, the Court hereby finds and ORDERS:

1) Plaintiff Amazon's Motion for Default Judgment, Dkt. #27, is GRANTED IN PART.

2) Defendants are jointly and severally liable for statutory damages in the amount of $2,002,000.

3) This award amount shall accrue interest pursuant to 28 U.S.C. § 1961.

ORDER GRANTING IN PART AMAZON'S MOTION FOR DEFAULT JUDGMENT - 10

1    DATED this 16 day of September, 2019.

2

3

4                    RICARDO S. MARTINEZ
                        CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART AMAZON'S MOTION FOR DEFAULT JUDGMENT - 11